Judy IRBY, Plaintiff,

v.

ALL STATE INDUSTRIES OF NORTH CAROLINA and Quaker City Industries, Defendants.

No. 1354.

United States District Court
W. D. Kentucky,
Bowling Green Division.

Nov. 14, 1969.

Earl Huddleston, Columbia, Ky., for plaintiff.

Harlin, Parker, Ricketts, Lucas & English, by Charles English, Bowling Green, Ky., for All State Industries.

Milliken & Milliken, by G. D. Milliken, Jr., Bowling Green, Ky., Bell, Orr & Reynolds, by Reginald Ayers and William R. Harris, Bowling Green, Ky., for Quaker City Industries.

## MEMORANDUM

SWINFORD, Chief Judge.

Defendant, Quaker City Industries, Inc., is a New York corporation with its principal place of business and offices at Karlstadt and Patterson, New Jersey. Quaker City manufactures swimming pools and pre-fabricated storage buildings at its New Jersey locations. The sole distributor of Quaker City's swimming pools is M & S Distributors of Linden, New Jersey. Defendant Quaker

City states that M & S Distributors is an independent organization under no control of Quaker City. No contrary allegation is in the record.

In the case at bar it appears that Quaker City manufactured a swimming pool in New Jersey, sold it to M & S Distributors, M & S Distributors then sold the pool to All State Industries, a North Carolina corporation with its principal place of business also in that state, All State next sold the pool to Imperial Swimming Pool Company which is a subsidiary or division of All State and the pool in question was then sold by Imperial to Silas A. Norris of Burkesville, Kentucky. The plaintiff, Judy Irby, while allegedly using the pool as Silas Norris' guest, was purportedly injured by a defect in the manufacture of the pool. To recover for her alleged injuries plaintiff has sued, among others, the manufacturer of the pool, Quaker City Industries, Inc.

Quaker City has moved to quash the return of summons and to dismiss the complaint against it for the reason that it has not and does not do business in the Commonwealth of Kentucky; therefore, the Secretary of State under KRS 271.-610 does not qualify as its agent for service of process.

The concept and basis for jurisdiction over parties has evolved during the last one hundred years to conform to the economic expansion of the country. At first, personal service within the forum state was required. Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877). Next, the forum state was allowed to constitutionally exercise its jurisdiction when there were "certain minimum contacts with (the forum) such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057 (1945). Within this constitutional framework "one act" by a corporation in the forum state has been held sufficient to give the forum state jurisdiction over the foreign corporation. McGee v. In-ternational Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). The "minimum contacts" standard of *International Shoe* does have its limitations. See Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). See generally, Note, Kentucky's Jurisdictional Bases—The Need for Change, 56 Ky.L.J. 650, 662 (1968).

Within the due process constitutional guidelines of these cases the states are free to determine the limits of their jurisdiction. Kentucky has provided under KRS 271.610(2) that:

> "Any foreign corporation that does business in this state without having complied with the provisions of KRS 271.385 as to designation of process agent shall, by such doing of business, be deemed to have made the Secretary of State its agent for the service of process in any civil action instituted in the courts of this state against such corporation involving a cause of action arising out of or connected with the doing of business by such corporation in this state. The plaintiff in such an action shall set forth in his petition the postoffice address of the home office of the corporation."

In determining the "doing of business" which is sufficient to make service of process valid on a foreign corporation, state court decisions must be followed. Velandra v. Regie Nationale des Usines Renault, 336 F.2d 292 (6 Cir. 1964); Smartt v. Coca-Cola Bottling Corp., 318 F.2d 447 (6 Cir. 1963); 6 A.L.R.3d 1103, 1116 (1966). See also Federal Rules of Civil Procedure 4(d) (3), (7).

The Kentucky Court of Appeals has had few opportunities to decide acts which constitute "doing business" under KRS 271.610(2). In Charles Zubik and Sons, Inc. v. Marine Sales and Service, 300 S.W.2d 35 (Ky.1957), the Kentucky court held that chartering vessels for use within Kentucky waters, operating its own river craft on Kentucky navigable streams, purchasing equipment in Kentucky, and repairing its barges in Kentucky constituted "doing business"

under KRS 271.610(2). In Field Enterprises Educational Corp. v. Hopkins, 378 S.W.2d 797 (Ky.1964), the maintenance of a salesman and a "division manager" with an office in Louisville, Kentucky, constituted "doing business" under KRS 271.610(2). In Post v. American Cleaning Equipment Corp., 437 S.W.2d 516 (Ky.1968), the supplying of at least two jobbers or distributors with a product which later caused an injury was held to be "doing business" under KRS 271.610 (2).

Cases from federal courts requiring the application and interpretation of "doing business" under KRS 271.610(2) are also sparse. In Star Elkhorn Coal Co. v. Red Ash Pocahontas Coal Co., 102 F. Supp. 258 (E.D.Ky.1951), the acts of keeping from one to four employees in Kentucky for the purpose of purchasing, inspecting, accepting, and rejecting coal at various tipples and mines were held to constitute "doing business". In Brandeis Machinery and Supply Co. v. Matewan Alma Fuel Corp., 147 F.Supp. 821 (E.D.Ky.1957), the contract complained of was signed in West Virginia by a West Virginia corporation and the corporation was held not to be "doing business" in Kentucky even though its stockholders lived in Kentucky, it had a bank account in Kentucky, and occasionally its stockholders met informally in Kentucky. In Gearhart v. WSAZ, Inc., 150 F.Supp. 98 (E.D.Ky.1957), affirmed 254 F.2d 242 (6 Cir. 1958), the transmission of television signals coupled with the regular solicitation of advertisements in Kentucky constituted "doing business". In Etheridge v. Grove Manufacturing Company, 287 F.Supp. 437 (W.D.Ky.1968), the leasing in another state of a crane which was later brought into Kentucky and caused injury was held not to constitute "doing business" and the lessor was not subject to service of process under KRS 271.610(2). Finally, in Pessin v. Keeneland Association, 45 F.R.D. 10 (E.D.Ky.1968), the act of being a co-executor and actively managing a Kentucky farming enterprise was held to be "doing business" under 271.610(2).

■ This is the state of the law to be applied to the case at bar. It is clear "that the *quantity* of business which must be done for a state to have jurisdiction over a foreign corporation has progressively become smaller and smaller." Charles Zubik and Sons v. Marine Sales and Service, supra, 300 S.W.2d at 36. It is equally clear that not every corporation remotely connected with transactions in Kentucky is "doing business" there. See Brandeis Machinery and Supply Co. v. Matewan Alma Fuel Corp., supra; Etheridge v. Grove Manufacturing Company, supra.

■ Deciding this case on its particular facts, as this court must do, Etheridge v. Grove Manufacturing Company, supra, 287 F.Supp. at 442, this court is of the opinion that Quaker City's motion to quash return of summons and to dismiss the complaint should be sustained. Quaker City owns no property in Kentucky, is not incorporated in Kentucky, does not have its principal place of business or any other business in Kentucky, does not purchase, sell, or distribute its product in Kentucky, and has not consented to the jurisdiction of Kentucky courts. In short, Quaker City does not have such "minimum contacts" with Kentucky to constitute "doing business" and make it amenable to service of process under KRS 271.610(2).

In Post v. American Cleaning Equipment Corporation, supra, 437 S.W.2d at 519, the Kentucky Court of Appeals indicated that the "minimum contacts" rationale of *International Shoe* and like cases is "no longer applicable in products liability cases in which the concept of 'strict liability' is applicable." See Dealers Transport Company v. Battery Distributing Company, 402 S.W.2d 441 (Ky. 1966). See also 19 A.L.R.3d 13 (1968). It should be noted in *Post,* however, that the party served under KRS 271.610(2) had contracted with two Kentucky jobbers or distributors to handle the product.

No response to Quaker City's motion to quash service and dismiss the complaint

has been entered by the plaintiff. The record, therefore, does not reveal the nature and size of Quaker City's business, the percent of its business which ultimately is installed in Kentucky, any special interest the forum may have in granting relief, the nature of Quaker City's advertising, the nature of the product, the direct mail contact Quaker City may have with a purchaser of the pool concerning warranty or additional supplies, or the relative convenience of the parties. Viewing this case in light of the language of *Post* quoted above, this court still has no alternative but to quash the service and dismiss the complaint as to Quaker City. The record will support no other action.

This court acquired no jurisdiction by reason of the attempted service of process under the long arm statute, KRS 271.610(2), and an order will be entered quashing the return on the process and dismissing the complaint as to the defendant, Quaker City Industries.